Number 172196 Robin Breda v. Cellco Partnership and Number 1810 Robin Breda v. Cellco Partnership Thank you. Mr. Keogh, good morning. Good morning, Honors. May it please the Court, Keith Keogh on behalf of Ms. Breda, the appellant. If it's acceptable to the Court, I'll have to reserve five minutes for rebuttal, especially if it's a cross-appeal. You may. Thank you. Ms. Breda's entire appeal turns on the phrase, assigned to a settler of service, and what that means under the Telephone Consumer Protection Act. Now, this Court does not need to examine that phrase in a vacuum. Twenty years ago, this Court dealt with a similar phrase in Town of Amherst discussing settler towers. And 20 years ago, the Court noted that that similar phrase in a different context is a very broad, there's lots of technology that encompasses settler service. More recently, and probably more to the point, the FCC in 2015 defined settler telephone service. And in doing so, it held that it was a broad, that the law is not limited to one specific spectrum of service. Instead, the important thing is the consumer-facing technology, that that is a settler of service. That order, and the District Court was bound by that under the Hobbs Act, which precludes the District Court from disagreeing with it. Now, Verizon's only evidence that Ms. Pryor did not have settler service is when a third party called Bandwidth... Counsel, could you, I'm confused, frankly, on a proposition that seems to divide the parties, so I'd like you to help me understand what's going on. They argue that you've got that footnote that you're relying on exactly backwards, but that footnote deals with exemptions from liability, and when the FCC grants exemptions from liability, that language should be read broadly. You're invoking that language to, in effect, expand liability under the provision of the TCPA that's at issue here, so you're reading those in very much oppositional ways, so what's wrong with their reading of the provision? Because the order is specifically cited to Section 1A.3i, which is the TCPA provision dealing with assigned to a settler of service. That phrase only appears once, so the FCC said throughout this order, when we discuss settler service, this is what we mean. Are you talking about the July 2015 order? Yes, Your Honor. Thank you. So it went out of its way to say it applies to the entire order and how they phrase settler service. It was not limited to the exception, and on top of that, it's cited Section 1A.3, and that's the TCPA provision dealing with assigned to a settler of service, so it's only defined once, and as we cite it in the case law. So you're telling us then that in that order, looked at in the way you're suggesting, the FCC is saying explicitly that that way in which the phrase settler of a telephone service should be read applies specifically to its use in 1A.3. Is that your position? Yes, Your Honor, and it would seem odd to have the exemption broader than the actual provision. It wouldn't need the exception then. So the case law holds that when you define one term for a statute, you do it consistently. Here, it's not a term used in multiple places. It's only used once. So it would not make sense to hold it otherwise, to define it any other way. But even putting that aside, even assuming there's no 2015 order, Ms. Berta's service was assigned to a settler of service. Here's what's puzzling me. The statute, unfortunately, uses a passive construct, assigned to. It doesn't tell us assigned by whom, who's doing the assigning. And so I've looked through the record and I've looked through the appendix to see if there's a description of the way that this actually works in the real world to see who assigns a number to a cellular service. Was the assignment of this number when it was given to or labeled by bandwidth, in which case you've got a problem, or was the assignment done somehow else so that the cell tower knew to transmit her signal? What's the relationship between the assignment and the spectrum that's referred to in this order? Can either counsel sort of point to something in the record that helps us figure out what assignment by whom are we talking about? Well, I would submit that bandwidth didn't assign anything. It listed it as a wireline, but it didn't assign it as a wireline. Ms. Berta already had that number. Well, then who did assign it using that definition? No one. The only assignment is Republic Wireless, the service it provided. That number was assigned to the settler of service that Ms. Berta had. By whom? By Republic Wireless when they supported that service. Okay. So why should we look at what Republic does to support the service as opposed to what bandwidth does or whoever gave the number to bandwidth and classified it as landline? Because the actual service controls. Bandwidth has nothing to do with Ms. Berta. Ms. Berta had the same phone number in the past. She went to Republic Wireless. She never went to bandwidth. She signed up for the Wi-Fi cell talk and text service with Republic Wireless. The fact that a third party listed the number, it should be irrelevant. Just for example, if I have a landline number and bandwidth listed my landline number as a cell phone, well, my landline is not assigned to a seller of service just because some third party says it is. You look at the actual service. I don't magically have a claim against anybody who calls my landline. So, and I think though, one thing that the FCC dealt with was that the term is broader than what's used on a specific spectrum. So maybe in 96 they had to be assigned to a specific spectrum and that may be where the term assigned came from, that only certain phone numbers were allowed to use the cell phone spectrum. That's no longer the case. Now numbers are ported back and forth all over the time and Ms. Berta's number is assigned to a seller of service and that's the only reason it can work on one. So that's why none of the calls here were on the strict seller of network. It doesn't look here as if Celco checked to see with bandwidth at all. But if another entity, if we should construe the statute the way that you want us to construe it, would a putative caller be able to know before calling the number whether it was assigned to a seller of service or not, either your interpretation or even under the other side's interpretation? The majority of the cases, yes. Bandwidth is a small player in the mobile market. The fact that, as we noted in our briefing, it's only licensed to provide wireline numbers. And whether it's misreported or not because of its license, we never got that far of a discovery. And how does it get control of those numbers? It buys them. It's an auction, Your Honor, is my understanding. So I think the other side's argument would be when those numbers are assigned to bandwidth so that it's got control of those numbers, then they've been assigned to something that is not a cellular service. But then those numbers can be ported to 35 different companies. They can go to Verizon. So you're saying that porting would be another assignment? It could be. Well, we have to get under that verb somehow if you're going to prevail. Well, I think the idea is there's nothing showing that bandwidth assigned it. The only evidence they introduced was bandwidth listed it. They never produced any evidence showing it was assigned by bandwidth to anything. Counsel, just sort of going back to the beginning when she was using a classic cellular telephone service, how did the number get assigned at that point? Who assigned the number to her at that point? The number originated with Verizon. Okay. She then had Verizon. It was a Verizon customer. In 2015, she went through public wireless. So that phrase is the phrase she ported the number? Is that? Yes, Your Honor. Okay. And so at that point, why would it be appropriate to say that she still had a number that was assigned to her by Verizon when she has now moved on to an entirely different service? You seem to be saying that once that number was assigned to her by Verizon initially, it's always assigned to her. Not at all, Your Honor. And actually, I think we took pains to say the opposite. The label Verizon puts on it, the label bandwidth puts on it, should not matter. It should only matter what the service is. So we have never said that since it was a Verizon cell phone, it's always a cellular number. For example, if she had ported it to a landline, it would be a landline. We said that the service she has, when she signed up with Republic Wireless, that the service she has is a cellular service because she can accept and receive calls on a cellular network. If she was in this courtroom right now and she forgot to turn her phone off, she would be able to make phone calls or receive phone calls from any other cell phone. So that's what she should be controlling. If she originally got the number by signing up with Verizon, how did the number get controlled by bandwidth? How did bandwidth own the number? She owns the number, Your Honor. Make no mistake, she owns the number. But how does bandwidth enter the picture here? Because Republic Wireless gets numbers from bandwidth. But I thought Verizon already had the number that gave it to her. They do, but bandwidth handles the provision and porting of numbers for Republic Wireless and maybe some other companies. But she's never had any privity of contract with bandwidth. She never heard of bandwidth until this case was filed. She went to Republic Wireless, just like if I'm a Sprint customer and I walk into a Verizon store and I want to switch carriers, I say, here's my number. And they take my number. And whether it's still a cellular number from Sprint or not depends on the service I should have. So for my very first number, never had a phone before, I go to Verizon and I say, please give me a number for your cellular service. And they give me a number. And then I decide I want to port it to Republic. That number leaves Verizon and goes to bandwidth? Well, it goes to Republic, but it might be registered under bandwidth for whatever porting capabilities. And what, did bandwidth buy it from Verizon? They don't buy anything. The numbers are fully portable. There's no consideration for the buying or selling. There's a communication law that requires cellular companies to allow numbers to be ported. So you can't hold them hostage. That's the idea. So there's no consideration going back and forth. Bandwidth is simply some type of holding company for Republic. It has no control over that number. Just like Ms. Breda can walk into AT&T today and say, I now want AT&T cellular service. And she now has AT&T cellular service. And she buys the exact same service here, which is the, you know, like every cell phone. Verizon offers it. AT&T offers it. Cell, talk, text, and Wi-Fi. That's, I would imagine, if we raise hands in this courtroom, everybody's smartphone has Wi-Fi and cellular. And everybody's phone in this courtroom is assigned to a cellular service, if that's the case. If I may, I'm sorry, go ahead. No, please go ahead. How, it would be helpful if we had more of these facts in the record so we understood exactly how this works in the real world. How does, when she turns on her phone, she's walking down the street, not near any Wi-Fi, how does the cellular tower and the computers that run that know to do something with the transmission from her phone that they wouldn't do if she were just walking along with a VoIP-only service? Because as we said, because Republic Wireless assigned that number to the cellular network. That's how it knows. Now, Republic Wireless has a subcontract with Sprint. But as we pointed out, whether it's Sprint, Verizon, you know, if you either have Verizon, but you're in Chicago and Verizon doesn't cover part of Chicago, Sprint or AT&T will pick it up. So I think that then, if I'm following you, would actually be the answer to the first question I asked you. The assigning here is the action that's taken to associate that number with the cellular service so that the phone will be received, the number, the calls to the number will be received and transmitted through the cellular service. And I wish I would have answered that when you asked me that the first time, Your Honor. Yes, that is the service controls. And the service controls because it was assigned to a cellular network, which is the only reason that it can work on there. Counsel, I guess I'd ask you to think about this for the purpose of your rebuttal and perhaps opposing counsel can address it when they step up. Just changing the focus from assignment to a particular type of entity, which is described in the statute as a cellular telephone service, it seems to me what we have here with this voiceover Internet protocol is no longer – but it seems to me it's arguable that what you have now is something other than a cellular telephone service. You have a kind of hybrid. It does have a cellular telephone component, but it also has a wire-based component. If I understand how this voiceover Internet protocol works, it can begin with Wi-Fi, but then the call eventually is transmitted over a landline. So at that point, it's no longer a cellular telephone service. So what you have now is, again, a kind of hybrid. You have two different ways in which the phone call can be transmitted. So my question is how – if that's a fair description of what the voiceover Internet protocol is, how do you reconcile that with the requirement that you're relying upon to be assigned to a cellular telephone service? I can answer that quickly if that's fine. Sure. Do you deem it no longer a cell phone if it goes on VoIP? Sorry? Do you deem it no longer a cellular service if it also has a Wi-Fi or VoIP component? Would it read the word exclusively into the Act? It does not state it needs to be exclusively assigned to a cellular service. Just like if I order lunch and I have a hamburger and fries, the fact that I have fries doesn't mean I no longer have a hamburger. I'm going to eat them both. And I know it's a bit flippant, but that's why the 2015 FCC order goes out of its way to make sure that it's broad, that it's the consumer-facing technology that's important. The behind-the-scenes issue, according to the FCC, shouldn't be the controlling factor. The TCPA was created to stop these harassing calls to our mobile devices, our cell phones. So whether it's going off, if I'm walking down the street and I get picked up by some Wi-Fi that I don't know about, or a cell tower, the annoyance and the harassing, when this brat tells Verizon to stop calling me and they never check to see the cell phone number, that's what the TCPA was designed to protect. And that's why the FCC made sure that that term was broad. But you do have in the statute, you have this phrase, perhaps to avoid this kind of these narrow categories, or any service, there is that language. Now, if you get into any service, it has to be for which the call party is charged, and that's not helpful to you in this case because your client was not being charged per call. But wouldn't that language sort of avoid these sort of narrow categories? It contemplates there can be other kinds of services, perhaps like the kind of service that we're talking about here, the VoIP service. I think that's correct, Your Honor, but that was 1996 when this was written, and in 2015 the FCC realized how mobile devices are being used. I mean, to make no mistake, if this court holds that if you have additional services, if your cell phone has Wi-Fi, you're going to have got the TCPA. Because now this, I don't know of a single cell phone that's only a cellular phone without any other option, with a Wi-Fi component. I can't imagine anything in this room has such a device. So that's why the 2015 FCC order made sure it was very broad, and that's why it specifically said, through office order, and then cited the provision of A-1-3-I. Thank you. Mr. Thomas. Good morning. David Thomas on behalf of Defendant Cellco Partnership, DBA Verizon Wireless, also here with Emily Bryan, who's also on brief. I'd like to address first plaintiff's appeal and the summary judgment. I'll then deal with the appeal on the motion to compel arbitration. I would like to – Yes, nobody has mentioned that other point. I would like to hear something on it. Yes, on the motion to compel arbitration. Yes. I'll get to both, Your Honor. I would like to reserve, if possible, a couple of moments of rebuttal on the arbitration, depending on what Mr. Keough provides in his rebuttal, if that's acceptable to the court. And I'll deal, Justice LaPez, with the issue of assigned to and hybrid services momentarily. But I would like to start with just taking a step back and looking at the complaint real briefly. The district court here got it right. When we look at the complaint, the plaintiff pleaded that, as we all know, that the call from an aide to a phone number that was assigned to this quote-unquote cellular phone service and that she was charged for the calls. Discovery proves that wrong. There's no genuine issue as to the material facts as to what this service is. Bandwidth has the numbering authority for wirelines. Bandwidth and Republic used to be one company. They split apart, and Bandwidth provides wireline numbers to Republic's customers. So what happens when that number is called is that Republic Wireless has technology, and they route the number that has been dialed to the plaintiff's telephone number to her smartphone. And they do that. The default is through the Internet, VoIP or VoIP. That's the default of this service to the extent there's no connection. Or if the connection is not that great, there is a backup of a cellular network through a contract with a third-party cellular company. But let's not make any mistake here. Republic and Bandwidth are not cellular providers. They don't have authority from the FCC. They don't do that. They are VoIP providers. Focus on what happened. I understand it's undisputed that she received calls from your client that were routed through a cellular service. Correct. So how could she have received calls that were routed through a cellular service if her number was not in some manner assigned to that cellular service so that the cellular service, its towers, its computers knew to route the call to her through the cellular service? I think it's associated with, and that's what Republic Wireless's 30B6 designee testified to, it's associated with a third-party cellular service. But when Verizon Wireless called, and this is in the record in the declaration we provided, they used a wireline. That wireline was made to a wireline number. There's a server that gets that, and then that's when it, whatever matches it. So it's a number listed by Bandwidth as wireline. Correct. Okay. How does that fact preclude the conclusion that it was also a number that was assigned to a cellular service? Otherwise, how could she have received calls through a cellular service? Again, it goes back to what assigned to means. We view that as the numbering authority. What does the numbering authority have authority to issue? So who do you see as the assignor? The assignor here would be either Bandwidth or Republic, the two entities that are connected to the plaintiff's telephone. Didn't Republic make some arrangements with, I believe, Sprint, so that Sprint would know that if a call came in on this number, it could use Sprint's cellular service? I'm not sure which way it's looking, but that's correct. Certainly there is a contractual relationship, and this was in the 30B6 testimony, with either Sprint or T-Mobile, which is sort of the backup connection. And there is no dispute that some of these calls went through a cell network because Ms. Breeder was not connected to the Internet. Certainly so. But here's why I don't think it makes a difference. Why the definition of assigned to doesn't matter in this case, and it goes to the hybrid nature of this service. The TCPA is clear. Section 227 does not state that a number assigned to a wireless plan that has a cellular component, which is how plaintiff pleads this in the briefing, is assigned to a cellular service. It does not state that a wireline associated with a third-party cell service through some kind of contract with a VOIP provider means cellular phone service in the TCPA. There is that other section, and that's why we moved for summary judgment. We saw this as another service. It's a hybrid service. The default is through the Internet. Therefore, plaintiff had to prove exactly what she pleaded in the complaint, which was she was charged for these incoming calls, and this she couldn't do. And that really was game, set, match under the TCPA on summary judgment. It really didn't relate to the definition of assigned to, because whatever it was assigned to, it was something different, some other service, than as the court found traditional cellular phone service. Counsel, I thought I heard you say that when Verizon made these calls, it thought it was placing calls through a landline. Did I understand you correctly? At the time, Verizon Wireless, when the auto dialer, if you will, the ATDS, made the call, a wireline is used. It's a landline that's used. So there's a landline trying to call a number that has been designated as a landline. And I think if you look at the 30B6 deposition testimony, those numbers will come in based on how they're dialed. For example, if someone uses a cell phone, obviously a cell connection is called into some server at Republic Wireless. If someone uses a landline, that method is via a landline. No one at Verizon thought they were calling a wireline number here. No, correct. They didn't check. They didn't check until afterwards. In fact, if anyone had checked, they were thinking they were calling one of their own cellular service numbers to have done them for payment. No, I'm not sure that's accurate because the number does get ported. But if they were to check, for example, you provided the new star in the form 499 with our declarations in support of summary judgment, and that stays wirelined, and that shows that bandwidth and Republic were VOIP providers. So when your client makes these robo calls, does it actually check to see what the numbers are assigned to before it calls? Is there any evidence in the record that you do that checking? No, there is no evidence in the record. So if the robo calls are being made without checking to see whether the numbers are assigned to cellular service at all, why should the FCC care whether it's determinable should someone check when apparently they don't? Why should the FCC care? Well, I think that would go to the FCC's concern in footnote 174. I mean, the concern with why they construed the exemption so broadly was that they didn't want to put the calling party in the position of checking to see how the call was received by the called party. Suppose we took your definition of assigned to. Would you be able to tell with certainty whether a number was assigned to a cellular service or not before you called it? I think it depends on the number, Your Honor, depending on whether we're... Even under your definition? Yeah, I think even under our definition. Counsel, what did some of the... And this goes to your assertion that Gleisen understood it was using a landline. Some of the cases talk about notice being given to the caller that this number would actually go... was actually a cellular phone number. I don't understand the function of notice at all. I don't know where this... And you seem to be suggesting that this might be a different case if Verizon had notice that the number that it was using could, in fact, go to a cell phone. Is that... Are you suggesting that notice would make a difference? Because the district court thought that was important. Understood. In this case, now, I just want to make clear. When I stated that Verizon thought it was using a landline, my point was when Verizon makes... You've heard of those robocalls. We prefer debt collection calls. But when Verizon makes those calls, it uses a landline. So it's sending it out via landline. That was my only point, and that's in the declaration of Sheryl Bullinger. But that's not the... The sender's line, you don't get around the statute just by going home and using your home landline. Correct. It's the recipient's call. Correct. But in answer to Judge Lopez's question, I believe you said earlier your client didn't check at all to see what type of service the recipient has, nor does it routinely do so. Correct. But if it's landline to a landline number and then it's forwarded to a cell phone, that would be a defense under the TCPA. Those are the call forwarding cases that we cited in our brief. But getting back to the issue of notice, that's what the district court found. We don't see that as determinative in this case because the plaintiff does not have a, quote-unquote, cellular phone. She's got a smartphone, and it uses both technologies. So it's one spectrum lock. You've got cell connections or you have VoIP. So we don't think the notice would apply here because it still is another service. We're not just talking about Verizon cell phone service or Sprint cell phone service. We're talking about a hybrid service, which when we're looking at the TCPA, it seems very clearly to fall into that last catch-all provision, which is the charge call provision in the TCPA, requiring individual charges for those calls for liability. When we look at 227, we actually view that as really an implied exemption. If you're using another service and there is no charge, you're exempt from TCPA liability. I did want to make a quick comment on footnote 174 before I move to the motion to compel arbitration. I think if you read the footnote and then you look at the text in which it's annotating, the FCC was dealing with a collect-calling service for prison inmates, and it was really concerned by putting the calling party under the almost impossible task of figuring out how that call got to the call party ultimately. And that concern also is seen in the ACA International case, where the D.C. Circuit invalidated the FCC's one-free-call rule. And it did so because it found it arbitrary and capricious because it put the caller in that position to figure out how the call, what spectrum block it was being sent. And as the district court concluded in the decision, the FCC could have talked about VOIP service in connection with footnote 174. It chose not to do so because VOIP is not like cell phone spectrum block services, and that's why it's not in there. So I think plaintiff really reads that footnote way too broadly. Ultimately, we believe the court did correctly grant summary judgment because the charge-call provision wasn't satisfied. Absent questions about the summary judgment, I'll move to the motion to compel arbitration because I see that I'm coming close to time here. I did have one quick question. Are you aware, are there any proceedings at all on this issue before the FCC, and has there been any consideration given to getting an amicus brief or the like from the FCC? I am not aware of any petitions to the FCC. That being said, Your Honor, I haven't checked recently. There could be, but I haven't heard of any on this particular issue. I think it really is a case of first impression with respect to this hybrid type service under Section 227. As to the motion to compel arbitration, after receiving the motion for summary judgment, in our view plaintiff realized that she couldn't prevail under the charge-call provision. So what she argued for the first time in the opposition was that the number, and Mr. Keogh somewhat argued it today, certainly did so in his briefing, that the number was assigned to a cellular phone service. In fact, because she obtained the number from Verizon, she received phone services from Verizon, and those were cell phone services, and as such, that number must still be assigned when she pointed it. Therefore, she didn't have to prove that she was charged for the call. She fell squarely within that first clause of Section 227. In briefing on appeal, my brother does try to relegate that argument to background facts, but when you look at the record, it's pretty clear that there was a great reliance on the services and product provided in that customer agreement. I refer the Court to Joint Dependents 693 and 696. Can I explain something to me? Sure, please. Aren't the issues involved here after she changed to a server? She did, Your Honor. And why would they be controlled by the Verizon agreement, assuming that was the big element? For two reasons. First, the district court concluded that the agreement had been terminated because she had ported the number, but when you look at the agreement, and that would be at Joint Appendix 382, only the service is terminated. The agreement doesn't terminate itself. And again, we think this is an issue of first impression, too. The contract, even if it was expired, the plaintiff then reached back to get a benefit from that contract when opposing summary judgment. To try to convince the court that this was a number assigned to a cell phone service, she relied on the services she received from Verizon Wireless. So that's why we think in the case law we cite in the brief, you can't benefit from a contract and then somehow avoid the terms of that contract, which would be the arbitration clause. How was she benefited from the contract? She made the argument in the briefing when opposing summary judgment that she did not have to actually comply with the charge call provision of the TCPA and show that she was charged for the calls because she had a cell phone service. And she had that cell phone service because she got the number from Verizon. She got Verizon services. But counsel, it seems to me all she's arguing is as a historical fact, this number was assigned to her by Verizon, but there's no way in which this current dispute arises out of any aspect of that agreement. Those seem to be two very different reliances by her on the relationship with Verizon. Again, one is just a historical fact. The other is that this dispute has nothing to do with any services she was receiving or not receiving, any accounting that Verizon did or did not do. I might have sounded unhappy to respond, Your Honor. Ron, we would respectfully disagree with that. In our pliability, when we cite to JA Joint Appendix 575, the plaintiff argued that the FCC holding the text message that uses Internet calling instead of traditional telephone dialing is a call, supports plaintiff's position that her cellular telephone number initially assigned to her by Verizon as part of her Verizon cellular service is assigned to a cellular phone service. She's trying to use the Verizon service to claim that she falls within that first clause of 227. Again, we don't have a case on this. We've looked for it. This fact pattern is not in any case that we've found. But when we look at the First Circuit's cases about, for example, holding a third party non-signatory to an arbitration clause, the rationale there is that if that non-party is using the agreement to benefit in litigation, which is what occurred here. She tried to use it to benefit litigation. She should be bound by the actual arbitration clause. And it's not like we're looking at another customer or the calls made to the other Verizon customer. We're specifically dealing with arguments she made arising from that agreement. And that's how we think she triggered the clause. Absent any questions, I believe I am out of time. Thank you. Thank you. Thank you, Your Honors. To be clear, Ms. Prada argued in summary of judgment in the briefing and before this court that how a party designates it, whether it's Verizon or bandwidth, should not be dispositive. What should be dispositive is the actual service. We said that in summary of judgment. We did not rely on the fact it was a Verizon service. In fact, when Your Honor asked me that question, I said no. Even though it might be helpful to us that Verizon initially assigned it, that should not be controlling. So what matters here, counsel, is making some sense of this question of assignment or is it how we characterize within the meaning of the TCPA the nature of the service that she's getting? Which matters? The latter because to the consumer, it doesn't make a difference. To the consumer, if they're getting a call on their mobile device, it's harassing, it's annoying, especially when it's not for them like this was. And that's what the TCPA was designed to protect. And that's why the 2015 order goes out of its way to ensure that it's broadly interpreted. Suppose she had gone to Sprint instead of Republic when she left Verizon. Could the number have ended up, could bandwidth have been involved in a transaction like that? I don't believe so. I believe Sprint is its own or some related Sprint company is its own holder. But the exact fact pattern would have happened. Verizon would have called that number. She would have hit two saying I'm not the customer. Verizon would have continued to call that number. She would have told them to stop calling me and they would have kept on calling. And we would have filed a lawsuit. She would have the exact same service because Sprint, most Sprint plans, I should say I'm unaware if any Sprint plan does not offer cell plus Wi-Fi. We'd have the same conversation. And so her claim is that there are lies out of it. Verizon filed a motion to compel arbitration after we took the deposition to Republic Wireless, after they testified that they don't have a landline or wireline product. They filed it after we won the motion to compel a class discovery and they filed tooth and nail. There was a strategy switch. But even if it wasn't, they never withdrew the motion for assembly judgment. They actually filed a reply. They participated in the hearing as opposed to the waiver argument, obviously. And they argued before this court. They're not telling this court don't rule on the merits, you should compel arbitration. They're telling you rule on the merits, affirm the court, and P.S. if you're not going to do that, you should reverse and compel arbitration. I can't imagine another fact pattern that is greater for waiver. This is much more egregious than the Joka-Roka real estate case that this court had years ago where it held waiver. In addition, we have the district court file no arbitration because the scope of the TCPA claim was outside the service agreement. Now, that decision is completely aligned with this court's UPS decision. And UPS itself is aligned with every other circuit to look at post-expiration conduct, post-contract expiration conduct. In fact, three circuits have looked at this issue in the context of the TCPA, and we cited those in our brief. The Sixth Circuit True Green Opinion, the Ninth Circuit Romani, and the Eleventh Circuit Gamble. So every circuit that has dealt with this issue has found subsequent conduct does not trigger arbitration. Three of those circuits have gone even further and held in a TCPA context, those calls do not trigger arbitration. So the court should be affirmed in holding that these calls a year after the end of the contract regarding a third party's calls were outside the scope of the arbitration provision. And even if that's not the case, they certainly waived it as well as we raised usual estoppel, but I won't get into that because it parallels our waiver argument. Finally, switching gears and ending on the sign to a seller service. The catch-all provision. It does not render a hard-card service no longer a seller service. And what I mean by that is it's still relevant. If the service was only VOIP and had nothing else, you need to have a charge for a call. But when it's assigned to a seller service and has VOIP and has something else, it does not render it no longer a seller service. Those can be read, they don't need to be read in dispositive, they can be read in conjunction. And finally, the district court did not consider a single fact plaintiff raised in response. It was not in the light most favorable to the plaintiff. She didn't even cite a single of our facts. Thank you for your time, and for the reasons stated in our briefs, we'd ask you to reverse the court on your issue of subject judgment and affirm on arbitration. Thank you. Thank you. Sorry. Fifteen seconds for a bubble, Your Honor. Did you ask for it? I did, initially. Okay, you're right. Okay, I'll be quick. I just wanted to correct one thing. We did not ask the district court to rule on summary judgment, and then if we lost to deal with the motion to compel arbitration, the transcripts in the record, we clearly decided that Judge Cather would deal with the motion to compel arbitration before getting to summary judgment. I just wanted to correct that. Thank you, Your Honor. Thank you.